**UNITED STATES of America,**
**Appellee,**

v.

**RELIABLE SALES COMPANY,**
**Claimant, Appellant.**

**No. 11204.**

United States Court of Appeals
Fourth Circuit.

Argued March 7, 1967.

Decided April 4, 1967.

Norman N. Yankellow, Baltimore, Md. (Joseph Rosenthal, Baltimore, Md., on brief), for appellant.

Thomas J. Kenney, U. S. Atty. (Arthur G. Murphy and Clarence E. Goetz, Asst. U. S. Attys., and Edward S. Szukelewicz, Atty., Dept. of Justice, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge:

The question before us on this appeal is whether certain magazines held by the district court in a forfeiture proceeding under 19 U.S.C. § 1305 (1964) not to be obscene should be immediately released to the importer or whether the order of release may be stayed until review by this court upon the merits of the question of obscenity. We agree with the determination of the district judge as set forth in his opinion of February 23, 1967, that the constitutional issue requires that the bulk of the property be released and a sample held in order that the Government may have review for the precedent value of an appellate decision and to determine finally the question on its merits in case of subsequent imports of the identical or similar materials.

On November 29, 1966, two shipments of nudist magazines were formally entered at the port of Baltimore to the account of Reliable Sales Company, the importer of record. By December 5, 1966, sample copies thereof had been sent to the United States Attorney at Baltimore for consideration of forfeiture proceedings. On December 7, 1966, the United States Attorney filed a complaint under 19 U.S.C. § 1305 [1] for the seizure and forfeiture of the magazines. By stipulation the case was submitted to the court on the sole issue of obscenity. On January 10, 1967, Chief Judge Roszel C. Thomsen filed an opinion in which he found three issues of the magazines to be obscene and eleven issues to be not obscene. On January 12, 1967, the judge issued an order directing that the obscene material be forfeited and that the issues found not obscene be immediately released from seizure and entered through the Bureau of Customs to the importer. Upon instructions from the District Attorney the officials of the Bureau failed to comply with this order. On January 16, 1967, the United States filed its notice of appeal to this court on that part of the order directing the release of the magazines found by the trial court to be not obscene, and on January 17, 1967, the Government filed a petition with the district court to stay the operation of its prior order of release pending appeal. In an order which was dated as of February 2, 1967, by agreement of the parties and the court, the court, over the claimant's objection, stayed the operation of his release order of January 12 until an appeal "from this

---

[1]. The pertinent parts of the statute read:

"Upon the appearance of any such book or matter at any customs office, the same shall be seized and held by the collector to await the judgment of the district court as hereinafter provided; and no protest shall be taken to the United States Customs Court from the decision of the collector. Upon the seizure of such book or matter the collector shall transmit information thereof to the district attorney of the district in which is situated the office at which such seizure has taken place, who shall institute proceedings in the district court for the forfeiture, confiscation, and destruction of the book or matter seized. Upon the adjudication that such book or matter thus seized is of the character the entry of which is by this section prohibited, it shall be ordered destroyed and shall be destroyed. Upon adjudication that such book or matter thus seized is not of the character the entry of which is by this section prohibited, it shall not be excluded from entry under the provisions of this section.

"In any such proceeding any party in interest may upon demand have the facts at issue determined by a jury and any party may have an appeal or the right of review as in the case of ordinary actions or suits."

<br>

stay order" can be heard by the Court of Appeals for the Fourth Circuit. In an opinion accompanying the order the court concluded that its decisions in proceedings under section 1305 should be subject to review but that the decision finding material not obscene should have the same effect of releasing the challenged publications as under the statute the decision of the Collector of Customs (or his subordinates) or the United States Attorney or his assistants not to file a complaint would have. However, the district court in this case did not act in accordance with that opinion but allowed his stay order to remain in effect until this hearing, which he knew had been set for March 7, 1967. In its opinion the district court stated that hereafter in routine cases it would release the bulk of the material found not obscene, but in order to avoid the possibility of mootness whenever it found material not obscene and ordered its immediate release provision would be made that a sample of each item be held until the time for appeal expired, and if the case were appealed by the Government until such time as the appeal is finally determined on the merits. The opinion further provided that in very exceptional cases if the Government promptly files an appeal the court "may grant a very short stay to permit the Government to present its request for a stay pending appeal to one of the judges of the Court of Appeals."

■ In United States v. Claimant (Central Magazine Sales, Ltd.), 4 Cir., 373 F.2d 633, we affirmed the judgment of Chief Judge Thomsen in United States v. 392 Copies of Magazine "Exclusive", 253 F.Supp. 485 (D.C.Md.1966), holding this section (305 of the Tariff Act of 1930, 19 U.S.C. § 1305) to be constitutionally valid on its face and as applied in that case. See Freedman v. State of Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed. 649 (1965). The same procedure, up to the point where the stay was issued, was pursued here, and we hold that the granting of the stay in this, a case of first impression where the review of the stay order was set for a day certain

and within a short time, was not an unconstitutional application of the statute.

We think it pertinent to note that while the cases deal principally with administrative delay which invalidates prior submission processes of censorship, the Court in *Freedman* specified the safeguards necessary to make the process constitutional as follows: (1) the burden of proof must rest on the censor; (2) no valid final restraint may be imposed except by judicial determination, and any restraint prior to such determination must be designed to preserve the status quo; and (3) *a prompt judicial determination must be assured.* See 380 U.S. at 58–59, 85 S.Ct. 734.

■ Because we think the necessity for a prompt judicial determination is in keeping with the spirit of the Court's strictures against precensorship that results in withholding from the public First Amendment materials, we reject the Government's argument that because the materials are in custodia legis, the order for their release should be stayed while the case pursues its way through the courts as would any other case.

■ Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), and A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed. 2d 809 (1964), both opinions written by Mr. Justice Brennan, emphasize that the determinative factor insofar as the validity of censorship procedures is concerned is whether or not adequate safeguards are provided to insure prompt dissemination of publications which have not been judicially determined to be obscene. Here we are in fact prohibiting the dissemination of materials which not only have not been judicially determined to be obscene but have been judicially determined to be not obscene. See also Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). We think the answer to the Government's expressed concern as to what might happen if this court disagrees with the district court as to the question of obscenity is to be found in the opinion of

Judge Frankel in United States v. One Book Entitled "The Adventures of Father Silas", 249 F.Supp. 911 (S.D.N.Y. 1966), wherein he said in releasing obviously obscene books because of undue delay:

"If a possibly obscene book slips through, it faces a gauntlet of universal state obscenity laws. To be sure, the First Amendment has not been held to inhibit state power less strictly than federal. * * * It does not follow, conversely, that the 'risks' of free expression should not occasionally, as a practical matter, be more readily tolerated by the Federal Government. Id. at 921 [Footnote omitted.]

Nor do we think that the Government is correct in its contention that the purpose of the statute would be frustrated by the release of the material after a decision by the district court that it was not obscene. The language of the statute does not lend itself to that construction:

"Upon the appearance of any such book or matter at any customs office, the same shall be seized and held by the collector to await the judgment of *the district court* as hereinafter provided; * * *" [Emphasis added.]

The statute then provides for trial and for a forfeiture and destruction of the matter upon a finding of obscenity and adds:

"Upon adjudication that such book or matter thus seized is not of the character the entry of which is by this section prohibited, it shall not be excluded from entry under the provisions of this section."

The addition of a right of appeal by the Government is not inconsistent with an interpretation of this statute which would allow the dissemination of material after it has been adjudicated not obscene by the district court. As we have pointed out, the appeal would still have a valid function to perform in reviewing the district court's decision on the merits. Nor is an adjudication of the district court the only one which must take place before questionable material can be released. The customs officials themselves must make the determination, and if they decide the material is not questionable, there is no reference to the courts and the material is released to the importer. If customs thinks the material is questionable, then the United States Attorney has to make a determination as to whether the material should be challenged in the district court. 19 U.S.C. § 1604 (1964). If the United States Attorney believes the material should not be challenged, he can order the material released to the importer. While we recognize that the issue passed upon by customs and the United States Attorney is different from that passed upon by the district court, in that the first two parties decide whether the material is questionable and the third whether it is obscene, nevertheless we are not upset by the thought that material will be released upon the opinion of a district judge that it is not obscene when it can be released on practically the same conclusion by either of the other two parties.

We think, therefore, that in the ordinary case a stay of the order of release on any material passed by the district court would not be compatible with the statutory scheme, even though such a stay might remain in effect only until the stay order itself could be reviewed by an appellate court. We think to hold otherwise would raise a constitutional question as to the application of the statute. We also think the inconvenience to an appellate court in having to advance such cases on its docket should be given consideration.

The opinion of the district court that it should not in ordinary cases stay its order for dissemination until such stay order can be reviewed by the circuit court is approved. We also agree that the district court in those cases wherein it finds the material to be not obscene should order a sample of the material retained in order that the case may not be mooted. An order will be entered

terminating our stay order which was issued in open court.*

ALBERT V. BRYAN, Circuit Judge (dissenting):

The magazines which the appellant insists should not be delayed, by the present appeal, in reaching the public are composed exclusively of pictures of nude women. Printed in Europe, they are offered for American consumption at a profit to the producer and the importer. They do not purport to be reproductions of works of art. If the material consisted of news or commercial reports, scientific data or discovery, expressions of political, religious or non-religious advocacy, or some novel ephemeral or evanescent product or information, I could grasp the argument of the urgency for dispatch in its dissemination—to prevent stultification of the First Amendment's commands of freedom of speech and press through a sluggish censorship. This, of course, is of primary concern. Cf. Freedman v. State of Maryland, 380 U.S. 51, 59, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

My point is that the admitted character of the instant publications is itself proof that the time required for appeal does not in this instance threaten First Amendment rights. Moreover, the expedition sought would effectually subvert or circumvent the will of Congress.

Appellant's argument, now sustained by the Court, is that adherence to the Congressional pattern, 19 U.S.C. § 1305, impairs its investment in the magazines. It will, it says, retard its competition with others who are spreading similar stuff throughout the United States. The subject of the pictures has not so far been thought perishable or in danger of obsolescence. Nor are we shown that its style or fashion may become outmoded or less alluring in the passage of time.

The act of Congress, 19 U.S.C. § 1305, outlines a procedure for the orderly determination of what, inter alia, is or is not obscene. The constitutionality of the legislation generally was established here in United States v. Claimant (Central Magazine Sales, Ltd.) etc. 373 F.2d 633 (4 Cir. Feb. 16, 1967). It provides for an appeal either by the United States or the importer. This means that the decision of the trial court shall not be conclusive of the inquiry—a not uncommon statutory scheme. Indeed, the opposite would be unusual. Had the trial court found obscenity, appellant would hardly consent to immediate destruction of all but a few copies pending review. Actually, appellant's grievance is that the Government enjoys the same right of appeal as the appellant.

Obviously, the aim of Congress was to prevent the distribution of questionable material until a complete resolution of the doubt had been obtained. At the same time it was alert to the dangers of arbitrary or dilatory censorship in administration. The statute was enacted in the hope of avoiding both. For a summary of the legislative history, see United States v. One Book Entitled "The Adv. of Father Silas", 249 F.Supp. 911 (S.D.N.Y.1966). No unconstitutional delay in the utilization of the statute is manifest in this case, even without consideration of the nature of the import. I do not see any factual premise upon which the majority predicates its annulment of the judicial process contemplated by the statute. Elsewhere the procedure has been declared free of constitutional defect. United States v. One Carton Positive Motion Picture Film, 247 F.Supp. 450, 459 (S.D.N.Y.1965), aff. on this point 367 F.2d 889, 898–902 (2 Cir. 1966).

The statute's reference to an adjudication in the District Court does not indicate a purpose to give it finality in any sense that would effectively preclude review. Adjudication connotes an appeal as well.

The District Court's order would turn loose about 1500 copies of the magazines, retaining but a few as a sample to keep this litigation alive for appeal purposes.

---

* Judge Bell prepared the foregoing opinion, but he died before the opinion was filed.

Parenthetically, I am not sure this procedure does not destroy the viability of the case by emptying it of the vital element of actual controversy. In any event, to dump these magazines on the country, while holding a few in the hope of preserving the case from mootness, is to mock the statute with lip-homage—and all to save the appellant from hurt by competition in this dirty business. An appellate decision in this case will not set guidelines for the future; it will be simply an ad hoc ruling. It is authoritatively recognized that there can be no universally applied standard of measurement for obsceneness. See Roth v. United States, 354 U.S. 476, 491, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Ginzburg v. United States, 383 U.S. 463, 480–481, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966) (Black, J., dissenting). This is emphasized by the allowance of a jury in the trial of criminal obscenity and libels for forfeiture, confiscation or destruction of the literature. 19 U.S.C. § 1305; *Roth* and *Ginzburg*, supra, op. cit.

It is no answer that subsequently the dealers in this commodity may be prosecuted by the States if the magazines are found obscene. Congress did not intend for the Federal courts to abdicate their responsibilities under the statute or to provide grist for the criminal courts. It wanted to dam the inflow. The procedure now approved by the Court has the effect of stamping the magazines with a judicial imprimatur. Though provisional, it is meanwhile certainly no less a serious obstruction to State prosecution.

Nor is it justified by the knowledge that Customs might have released the material before it reached the courts. This is not an unusual possibility. Often a Government agency or officer must exercise a judgment to become effective without review by the courts, even though a contrary decision might have been rendered in the courts. Prime examples are the determinations by Internal Revenue of no tax liability. It is simply another of many instances where resolutions must of practical necessity be left to executive discretion. However, once it has been taken to the courts, Congress certainly may constitutionally exact a full canvass of the doubtful issue. It must be remembered that only *questionable* magazines, books, etc. are in practice subjected to the delay of full-dress trial and appeal.

I would continue the stay upon the magazines' release until a final adjudication is made of the determinative inquiry. Frequently, bail is denied a convict until the termination of an appeal by the Government to the Supreme Court from an intermediate reversal of his conviction. I think doubtful literature is entitled to no greater consideration during an appeal from the District Court to the Court of Appeals. If the appellant here is to deal in merchandise of uncertain decency, it is not puritanical to require it to await a final decision. The Government, too, is entitled to its day in court.