GROVE PRESS, INC., ET AL., *v.* CORRIGAN, PROSECUTING
ATTORNEY ET AL.

[Cite as Grove Press, Inc., v. Corrigan, 21 Ohio Misc. 185.]

(No. 877845—Decided November 5, 1969.)

Common Pleas Court of Cuyahoga County.

*Messrs. Berkman, Gordon & Kancelbaum, Mr. Bernard
A. Berkman, Mr. Larry S. Gordon* and *Mr. Niki Z.
Schwartz,* for plaintiffs.
*Mr. John T. Corrigan,* prosecuting attorney, and *Mr.
Francis Sweeney,* for defendant Corrigan.

186

*Mr. Donald K. Barclay* and *Mr. Harry B. Fischer,* for defendant City of East Cleveland.

FRIEDMAN, J. On October 10, 1969, at 3:48 p. m., counsel for plaintiffs appeared before this court with a duly filed petition seeking a declaratory judgment, permanent and temporary restraining order, and an immediate ex parte restraining order by virtue of the time element involved with relation to the matter in question.

Attached thereto were affidavits properly sworn to, which disclosed to this court that approximately within three hours thereafter a picture entitled "I Am Curious (yellow)" was to be shown in a theater in the city of East Cleveland, Ohio; that the picture was to be shown under a contract duly executed by the exhibitor and the theater owner. The allegations and affidavits disclosed to this court that there was reasonable cause to believe the public officials had clearly expressed their opinion that said picture was obscene and in violation of the laws of the state of Ohio, and they further indicated their intent to confiscate the film after the first showing upon their determination that said film was obscene.

The court was also presented, with relation thereto, a copy of an opinion recently decided by the United States Court of Appeals, Second Circuit (New York) (404 F. 2d 196 (1968)), composed of three eminent judges, Judges Friendly, Hayes and Lumbard. In that particular case a jury had unanimously found that the film "I Am Curious (yellow)" was obscene. The court by a two-to-one decision reversed it, the majority deciding on the basis that the question as to obscenity involves the First Amendment of the Constitution of the United States and that the jury's verdict should not be considered conclusive. The majority decision held that upon a review of all the factors pertaining to said motion picture and the requirements as established by the United States Supreme Court that said movie was not obscene and therefore not in violation of the obscenity statute pertaining thereto.

Judge Lumbard in his dissent stated that since the

jury did determine the obscenity of said picture based upon proper instructions of law given to them by the Presiding Judge Murphy, the jury verdict should not be disturbed by the Appellate Court.

In addition to the above, there was appended to the petition and motion the reviews by very prominent writers of the news media in their capacities as movie critics, to wit: The New York Times, Life, Look, Washington Post, Saturday Review and others, who, in their opinion, upon viewing the movie, expressed that said film was not obscene and that it did have social and moral value even though the sex part contained therein was more pronounced than ever previously shown.

Also attached to the pleadings was a list of approximately sixteen cities, including New York, Philadelphia, Boston, Washington, D. C., San Francisco, Los Angeles and Columbus, Ohio, where the movie was being shown without any legal restrictions from any courts or authority as well as a list of other cities with whom contracts had been made for its exhibition.

Upon an analysis of all the facts submitted, this court concluded that there was a legitimate dispute involving the question of obscenity of this movie and that a confiscation of the same without a proper judicial hearing would be in violation of our established laws as pronounced by the United States Supreme Court and other courts. This court therefore granted an ex parte restraining order under and pursuant to Section 2727.02, Revised Code, and set a hearing on this matter to determine whether or not this temporary restraining order should be continued or dissolved.

The hearing was held before this court on October 15, 1969, at which time counsel for plaintiff appeared in court, reaffirmed the affidavits as afore stated and presented evidence to the court by calling Mr. John T. Corrigan, prosecuting attorney of this county, Mr. Donald K. Barclay, assistant city law director of East Cleveland, and Detective Milton Jennrich. Testimony was elicited from the witnesses that Mr. Corrigan and Mr. Barclay were fully aware

188

for at least more than one week prior to the showing of this film that it was to be exhibited.

Upon presentation of the evidence and arguments, counsel for the state and the city of East Cleveland requested permission to file a brief within ten days thereafter and counsel for the plaintiff requested permission to file a reply brief within five days after the filing of the briefs by the state and the city of East Cleveland. The requests were granted.

DISCUSSION OF LAW.

At issue in this matter are two distinguishable principles of law that have been established by our courts:

(1) The state under its police powers has complete authority to provide for the abatement of a nuisance and may authorize its officers to summarily destroy those things specifically designed and prepared for the commission of the crime.

(2) The second principle of law is that to take the property of a person used in a lawful occupation and destroy it, without trial and without notice, is taking property without due process of law. 11 Ohio Jurisprudence 2d, Constitutional Law, Section 732, page 81.

In many areas of the law these principles can easily be distinguished and create little troube for the courts.

"It has always been held that gambling devices or equipment are inimical to the public good; and the law throws no protection about gambling devices and recognizes no property rights existing therein; they therefore may be confiscated and destroyed, and such confiscation or destruction is within the police powers of the state or a municipal corporation. Articles used for gambling or other illegal purposes, although harmless in themselves, may become nuisances by being put to an illegal use, and in such cases fall within the ban of the law and may be summarily destroyed." 25 Ohio Jurisprudence 2d, Gambling, Section 46. See also *Brafford* v. *Calhoun,* 72 Ohio App. 333.

The area with relation to obscenity is, however, in an entirely different category. It has become a most perplex-

ing problem and an emotionally disturbing one. Needless to say, what is and what is not obscene is a highly nebulous determination. It brings into play one of our most precious rights—the rights given to us under the First Amendment of the Constitution of the United States and also the Fourteenth Amendment.

The United States Supreme Court in its decision in *A Book Named "John Cleland's Memoirs of a Woman of Pleasure"* v. *Atty. Gen. of Massachusetts* (1966), 383 U. S. 413, 418, set forth the following standards which must coalesce before a book, a film, or other writing or publication can be considered obscene.

(1) It must be established that the dominant theme of the material taken as a whole appeals to the prurient interests in sex.

(2) That the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters.

(3) That the material is utterly without redeeming social value.

These three standards must be met before a book or film or publication can be declared obscene. It would be tragic in an orderly society where we are governed by laws to place that necessity and determination in the hands of an individual, be it a police officer or a public official, who upon his own judgment would make a determination that the publication or film or any written material, per se, is obscene, and therefore have a right to confiscate without judicial determination, and have no different standard of seizure apply to alleged obscenity than to gambling paraphernalia, narcotics and other legally recognized contraband to which the First Amendment rights do not apply.

The case of *Quantity of Books* v. *Kansas* (1964), 378 U. S. 205, concisely deals with the question of whether obscenity may be treated as contraband. The court in its opinion stated:

"It is no answer to say that obscene books are contraband and that consequently the standards governing searches and seizures of allegedly obscene books should not dif-

fer from those applied with respect to narcotics, gambling paraphernalia and other contraband. We rejected that proposition in *Marcus et al* v. *Search Warrants* (1961), 367 U. S. 717, 730, 731."

And on page 213 of its opinion, the court stated:

"If seizure of books precedes an adversary determination there is abridgement of the right of the public in a free society to unobstructed circulation of non-obscene books."

And in the case of *Freedman* v. *Maryland* (1965), 380 U. S. 51, involving a motion picture censorship case, it was stated by the court that there must be a prior judicial determination in an adversary proceeding of the obscenity material in order to obtain a valid restraining order.

The question of confiscation without due adversary judicial hearing was presented in a case before the Honorable Charles McNamee, now deceased, who at that particular time was presiding on the Federal District Court of the Northern District of Ohio, Eastern Division. The case was entitled *New American Library of World Literature* v. *Allen,* 114 F. Supp. 823. The plaintiff, a New York corporation, was a publisher of paperbound pocket-size editons of fiction and nonfiction books. The plaintiff sought a permanent injunction against the defendant Chief of Police of the city of Youngstown, Ohio. The plaintiff alleged that the defendant had sent a letter to the plaintiff's local distributor ordering the distributor to remove certain alleged obscene books from its shelves, or else face arrest and prosecution. The defendant based this acton upon a city ordinance which prohibited the sale of obscene or immoral literature. Plaintiff sought the injunction on the ground that the statute was vague and unconstitutional. The court held the ordinance constitutional but granted plaintiff the injunction and stated:

"The defendant was without authority to censor books. Such a drastic power can be vested in a police officer only by a valid express legislative grant. As chief of police it was defendant's duty to examine the suspected publications to determine *whether there was probable cause for*

*prosecution. He was without authority to determine with finality* whether the books were obscene or immoral in violation of the ordinance. In the event prosecutions were undertaken, the burden would rest upon the city officials to establish by proof beyond a reasonable doubt every element of the offense, including the obscene or immoral nature of the books. *Until a court of competent jurisdiction adjudged a book to be obscene or immoral, there would exist no warrant in law for its suppression."* (Emphasis ours.)

The court further went on to say that the plaintiff had been deprived of a property right without due process of law. In that sense the plaintiff would sustain irreparable injury if the actions were permitted by the police authorities. This case has been cited with authority in two United States Supreme Court cases. *Smith* v. *California,* 361 U. S. 147, at page 169; and *Bantam Books* v. *Sullivan,* 372 U. S. 58, at page 67.

In accord, see *Peltz* v. *South Euclid,* 11 Ohio St. 2d 128; *Marcus* v. *Search Warrants of Property at 104 E. 10th Street, Kansas City, Mo.* (1961), 367 U. S. 717; and *Quantity of Copies of Books* v. *Kansas* (1964), 378 U. S. 205. See also *Metzger* v. *Pearcy* (1968), 393 F. 2d 202, and *United States* v. *Thomas* (1969), 282 F. Supp. 729, 742.

The aforegoing cases clearly support the position that prior restraint in advance of an adversary hearing to determine the obscenity is constitutionally impermissible and the public is not entitled to such protection. The United States Supreme Court has also stated that state regulations with relation to the question of obscenity must conform to procedure that will insure against the curtailment of the constitutionally protected expression which is often separated from obscenity by a thin and uncertain line (*Bantam Books* v. *Sullivan, supra,* at page 66; *Quantity of Copies of Books* v. *Kansas, supra,* at page 210; and *Pennekamp* v. *Florida* (1945), 328 U. S. 335).

The First Amendment freedoms are delicate and vulnerable as well as extremely precious in our society. The threat of sanctions may deter their exercise almost as

potently as the actual application of sanctions. *NAACP* v. *Button*, 371 U. S. 415, at page 433.

This court believes that the Legislature of the state of Ohio, being fully cognizant of the preciousness and the delicacy of the First Amendment question relating to a question of obscenity, adopted Section 2905.343, Revised Code, providing public officials with an opportunity of an orderly civil proceeding to determine the question of obscenity without resorting to a criminal proceeding. That section provides as follows:

"* * *

"(A) The prosecuting attorney, the chief executive officer of a municipal corporation, or the chief legal officer of a municipal corporation, in which a person, firm, or corporation sells or offers for sale or distributes or is about to sell or distribute or has in his possession with intent to sell or distribute or is about to acquire possession with intent to sell or distribute any book, magazine, pamphlet, comic book, story book, writing, paper, picture, photograph, image, or any written or printed matter of an indecent character, which said prosecuting attorney or officer believes to be obscene, lewd, lascivious, filthy, indecent, may maintain an action for an injunction against such person, firm, or corporation in the common pleas court to prevent the sale or further sale or the distribution or further distribution or the acquisition or possession of such article or articles.

"(B) *The person, firm or corporation* sought to be enjoined shall be entitled to a trial of the issues within one day after joinder of issue and a decision shall be rendered by the court within two days of the conclusion of the trial. If on the trial of the isues the court determines that the article is obscene the court shall enter a judgment or decree enjoining the sale or further sale or the distribution or the further distribution or the acquisition or possession of such article. Upon application of the plaintiff for a temporary restraining order pending the trial of the issues the court may forthwith restrain the defendant from selling or offering the same for sale until one day after

joinder of issue. No bond shall be required to make said restraining order effective. (Emphasis ours.)

"(C) In the event that a final order or judgment of injunction be entered in favor of the petitioner, such final order shall contain a provision directing the person, firm, or corporation to surrender to the sheriff of the county any of the matter described in division (A) of this section, and such sheriff shall be directed to seize and destroy the same.

"* * *"

The testimony as presented before this court at the hearing of this matter disclosed that the officials of the city of East Cleveland had full knowledge of the intended showing of the film approximately more than one week prior thereto. The assistant city law director Donald Barclay contends in his brief that Section 2905.343, Revised Code, has no application to a motion picture.

It is the court's judgment that a careful analysis of the express wording in paragraph (A) of the foregoing statute which contains "picture, photograph, image" by all sense of reasonable interpretation includes within its meaning a movie or film.

It would have been proper and prudent judgment for said officials to have come before this court, within a reasonable time after being aware of the fact that the film was to be exhibited, seeking a restraining order against its showing, and this court, pursuant to Section 2905.343, Revised Code, would have complied with the provisions contained therein and prompt determination would have been made as to the question of obscenity. Consequently, if the court after adversary proceedings determined that the film was obscene in accordance with the standards as stated by our courts, there wouldn't have been any showing of this film. Or, in the alternative, if the court had determined that the film was not obscene, the duty of said public officials would have been fully performed in accordance with the law. This, however, in their judgment they chose not to do.

To summarize, this court on October 10, 1969, was pre-

sented with the request by plaintiff for an ex parte restraining order to temporarily prohibit the defendants from confiscating the film in question to be shown that evening without a prior judicial hearing on its obscenity, which the court granted. Mr. Donald Barclay, assistant city law director of East Cleveland, who strenuously proclaimed that the court had no authority to grant such order now states in his brief:

"That these defendants are now satisfied that the restraining orders issued by the court were not void ab initio as previously stated. However the defendants believe that the restraining order issued constitutes an abuse of discretion and respectfully request that such orders be dissolved."

A careful consideration of the facts in this case and particularly the testimony presented clearly refutes the contention of the defendants and bears out that the plaintiffs acted prudently in seeking the relief requested for we find the record discloses the following at page 62:

*Statement of Mr. Donald Barclay*:

"We would have made an arrest at the close of the evening show and we would have either subpoenaed the film because our hearings are during the day or confiscate if this could not be arranged."

On page 44 of the record in answer to a question presented by Mr. Berkman, counsel for plaintiff, to Mr. John T. Corrigan, prosecuting attorney of Cuyahoga County, he stated as follows:

"Q. How did you intend to acquire possession of the film upon arrest? A. By confiscation as contraband."

This court does not quarrel with Mr. John T. Corrigan or Mr. Barclay. They express their honest beliefs and what they feel the law is. However, this court is bound by the judicial determinations made by our federal and state courts in accordance with its best understanding.

There is no question in the court's mind that our courts have clearly and concisely established the principle that in the area of a question of obscenity there can be no doubt that there must be a prior judicial determination before a confiscation is to be made.

Counsel for the city of East Cleveland in its brief cited many cases which this court feels do not support their position, particularly the case of *Grove Press, Inc.,* v. *Kansas* (October 6, 1969) (Federal District Court of Kansas), numbered KC-2997 and KC-2992, appended to defendants' brief. A careful consideration of said opinion in the *Grove Press case* clearly supports the position of our courts that there must be full compliance with the procedural safeguards as established by the Supreme Court of the United States that will constitutionally protect the right of free speech and expression and that will prevent any prior restraint before the question of obscenity can be resolved in a full adversary proceeding.

The court in the above case based upon this principle stated that the opportunity was there to the plaintiffs for the adversary proceedings but that the plaintiffs apparently by the constant delays with relation thereto waived their rights as to an adversary judicial determination.

Since the hearing before this court on October 15, 1969, there has intervened an indictment against the manager of the theater in showing the film in question. The matter of the obscenity of this film was presented before the Cuyahoga County Grand Jury. The grand jury upon viewing said film returned a true bill of indictment charging said manager of the theater with violation of the obscenity statute.

This indictment presents to this court a most serious question. Prior to said indictment it was the intent of this court to have an immediate hearing and determination as provided for under Section 2905.343, Revised Code. The indictment, however, charges the plaintiff with the violation of the criminal laws of this state that bears a possible sentence of 2 to 7 years upon conviction. To proceed with a determination by this court as to the question of obscenity in a civil hearing would undoubtedly tend to interfere with the process of a fair and an impartial trial of the criminal proceedings. Whatever the decision would be by this court upon hearing and determination of this case, it would be bound to have some affect either on the state's or the defendant's position which would also bring into play

other constitutional rights as to fair and impartial trials. The quantum of proof required in a criminal case is much greater than that required in a civil case, which is another consideration relating to this problem.

It is therefore the considered position of this court not to proceed with an early determination in the civil proceeding of this matter as long as the indictment involves the obscenity question and is pending, for to do otherwise would unquestionably jeopardize the rights of the parties in the criminal matter to a fair and impartial trial.

Furthermore, since plaintiffs during the course of the hearing and in their brief have stated explicitly that if it becomes necessary in any proceeding including a criminal charge to voluntarily deliver a copy of said film to be used as evidence, it is therefore the order of this court that the restraining order issued by this court on October 10, 1969, be continued under the same conditions and bond until such time as there is proper legal adversary determination of the question of the obscenity of the film. In addition thereto the plaintiffs are ordered as a condition of the continuance of the order of the court to deliver to the county prosecutor or his designated representative either the film shown or a true copy thereof, if the state needs the same as evidence in its case.

*Judgment accordingly.*