HEWITT t/a Baltimore Film Society *v.* MARY-LAND STATE BOARD OF CENSORS

[No. 74, September Term, 1969.]

*Decided November 10, 1969.*

*Robert M. Wright* and *Richard C. Whiteford* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

We here decide the first moving picture censorship case since the passage of Ch. 598 of the Laws of 1965, now § 19 of Art. 66A of the Code, in which (by stipulation of the parties) we have not had to view the suspect film. Our relief at this is great and joy fills our hearts. The exhibitor here, in claiming the right to show the films without the approval of the Board of Censors, does not say they are not obscene (as the lower court found them to be) but relies solely on the claim that the court hearing specified by § 19 of Art. 66A to be held within five days after the filing of the case was not held until the seventh day. The statute directs the Board to approve or disapprove a film within five days of its submission and, if the Board disapproves, requires it to apply within three days to the Circuit Court of Baltimore City "for a judicial determination as to whether such film is obscene, or tends to debase or corrupt morals, or incite to crime, within the meaning of § 6 hereof." The statute then provides:

> "The Circuit Court for Baltimore City shall, within five (5) days after the filing of said application, conduct a hearing, and shall in connection therewith view such film; within [two] (2) days after such hearing said court shall enter its decree and order requiring that said film be approved and licensed or be disapproved if in violation of the provisions of said § 6 hereof."

In the present instance the two films involved — "Alimony Lovers" and "The Wicked Die Slow"—were timely disapproved by the Board and it, within three days thereafter, filed a petition with the court requesting the judicial determination spelled out by § 19 of Art. 66A. Due to a belief that the exhibitor did not want the speedy hearing afforded it by the statute, the Attorney General's office did not arrange for the court to view the film and conduct a hearing within five days. An inquiry of counsel for the exhibitor brought the answer that the belief of the Attorney General was wrong. As a result, on the seventh day Judge Sodaro viewed the pictures, heard argument and decided in a written opinion that the films are obscene. The exhibitor now argues that because the Board's petition to the Circuit Court was not heard within five days the exhibitor is free to show the films without approval.

The Attorney General takes the position that the exhibitor is estopped to make the contention and, in any event, the court's disapproval came within seven days of the filing in court of the petition and within fifteen days of the submission of the films to the Board, so that the purposes of the statute and the protections it affords the film-makers and exhibitors were gratified.

It appears that the appellant, Hewitt, who trades as the Baltimore Film Society, some two weeks before submitting to the Board the films here involved, had submitted two other pictures titillatingly titled "Room and Broad" and "Touch of Leather." Because this Court was then considering a case in which counsel for Hewitt had

argued the validity of the statute and the scope of its application, he wrote an assistant attorney general a letter on December 17, 1968, saying:

"This will confirm our recent telephone conversations in regard to the two most recent films [Room and Broad and Touch of Leather] submitted to the Censor Board by Baltimore Film Society * * *. I have agreed in their behalf that the time for trial as required by statute is hereby waived by them. I will notify you when Baltimore Film Society will be prepared for trial * * *."

The Board notified Baltimore Film Society that both Alimony Lovers and The Wicked Die Slow had been rejected and that suit had been filed in the Circuit Court, but the Society did not tell its lawyer. After the five days had run, the assistant attorney general called Baltimore Film's lawyer and learned that his client could not stipulate as to Alimony Lovers and The Wicked Die Slow. As a result, view, trial, argument and decision all came on the seventh day.

While it was the feeling of the assistant attorney general that Baltimore Film Society did not want any trial as to any obscene movie until after this Court had acted, we do not think Baltimore Film waived its right to a speedy trial or is estopped from asserting that the statute was fatally disobeyed. Its letter was written before the films here involved had been submitted and specifically referred to "the most recent films submitted to the Censor Board by Baltimore Film Society" as those as to which the statutory times for hearing were waived.

We turn to the Attorney General's second contention. In *Freedman v. Maryland,* 380 U. S. 51, 13 L.Ed.2d 649, the Supreme Court held that the then Maryland moving picture censorship law was unconstitutional because (1) upon the censor's disapproval of a film, the exhibitor must assume the burden of instituting judicial proceed-

ings and of persuading the courts that the film is protected expression; (2) once the censor has acted against a film, exhibition is prohibited pending judicial review, however protracted, and (3) no assurance of prompt judicial determination is afforded. The Court held (p. 59 of 380 U. S., p. 655 of 13 L.Ed.2d) that to be valid a censorship plan must assure the exhibitor

> "by statute or authoritative judicial construction that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. * * * [T]he procedure must also insure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license."

The Court concluded (p. 61 of 380 U. S., p. 656 of 13 L.Ed.2d):

> "We do not mean to lay down rigid time limits or procedures, but to suggest considerations in drafting legislation to accord with local exhibition practices, and in doing so to avoid the potentially chilling effect of the Maryland statute on protected expression."

The legislature followed the advice of the Supreme Court. In *Trans-Lux v. Md. Censor Board,* 240 Md. 98, 102, we held that:

> "By the Act of 1965, the General Assembly repealed and reenacted Section 19 of Article 66A of the Code with the obvious intention of fully meeting the three objections set forth in the *Freedman* opinion. We think the legislature succeeded in accomplishing this result

[by setting five days after submission of a film for the Board to act, three days after disapproval to go to court, five days for the court to begin a hearing and two days after the hearing ends for the court to make a decision.]"

Under the facts of the present case, there is no need to decide, and we do not, whether a failure by the Board to act initially within five days or to go to court within three days of acting or failure by the court to hear and decide the case within seven days would entitle an exhibitor to show a film without approval or in the face of late approval. It is conceded that here the Board acted in full and timely compliance with the statute. The court did not begin to hear the case within five days but it did both hear and decide it within seven days, and the result is the same as if it had heard it in full on the fifth day and then decided it on the seventh. In both instances the exhibitor had his final answer within the statutory period of fifteen days (if the hearing does not go beyond five days) from submission of the film to the Board and within seven days of submission by the Board to the court. The exhibitor has been afforded his full constitutional protection contemplated by the Supreme Court and by the statute implementing that Court's views and we are not prepared to say that under the circumstances the statutory scheme of film censorship has been made impotent in this case merely because the Board's petition was not heard on the fifth day and decided on the seventh, but was both heard and decided on the seventh day.

The exhibitor's argument that the legislature intended that there be two days for judicial contemplation prior to decision to insure or aid a sound result and the trial judge had so much less time for consideration that his decision is subject to suspicion leaves us cold. To begin with, Judge Sodaro wrote a reasoned and analytical opinion. Next the exhibitor does not say the court reached the wrong result, does not even challenge its conclusion and holdings that the films are obscene. Finally, this Court

534

has had no difficulty doing what Judge Sodaro did without to any extent feeling that the time was too short. See *Trans-Lux, supra,* where we noted (p. 101 of 240 Md.) :

> "We advanced the case for hearing and on June 29, 1965, viewed the film in the morning of that day, heard arguments of counsel and after conference later the same afternoon, filed a *per curiam* order by a majority of the Court, reversing the Circuit Court and directing that the mandate issue forthwith."

*Order affirmed, with costs.*