## FREEDMAN *v.* STATE

[No. 144, September Term, 1963.]

*Decided February 10, 1964.*

500

The cause was argued before HENDERSON, HAMMOND, PRES-COTT, MARBURY and SYBERT, JJ.

*Felix Bilgrey* and *Richard C. Whiteford*, with whom were *Due, Whiteford, Taylor & Preston* on the brief, for appellant.

*Robert F. Sweeney, Assistant Attorney General*, with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell, State's Attorney*, and *Robert F. Freeze, Assistant State's Attorney*, on the brief, for appellee.

Brief Amicus Curiae filed by *J. Cookman Boyd, Jr., Sidney A. Schreiber* and *Barbara A. Scott* for Motion Picture Association of America, Inc.

SYBERT, J., delivered the opinion of the Court.

In order to test the constitutionality of the Maryland motion picture censorship statute, the appellant invited arrest by exhibiting the motion picture film "Revenge at Daybreak" at a theatre in Baltimore City without first having submitted the film to the Maryland State Board of Motion Picture Censors for approval and licensing, as required by Code (1957), Art. 66A, Sec. 2.[1] He was indicted and tried in the Criminal Court of Baltimore for violation of Sec. 2, and convicted after his timely motions for judgment of acquittal were denied. He now appeals.

The appellant has attempted, both in the court below and on this appeal, to attack the constitutionality of Art. 66A in its entirety, even though he was tried and convicted only for vio-

1. "§ 2. It shall be unlawful to sell, lease, lend, exhibit or use any motion picture film or view in the State of Maryland unless the said film or view has been submitted by the exchange, owner or lessee of the film or view and duly approved and licensed by the Maryland State Board of Censors, hereinafter in this article called the Board."

lation of Sec. 2. The principal contention is that the statute is void on its face as an unconstitutional infringement upon free speech and press violative of the First Amendment to the United States Constitution (made applicable to the States under the Fourteenth Amendment) and of Art. 40 of the Maryland Declaration of Rights. The appellant then argues that in the defense of a criminal prosecution under Sec. 2 of Art. 66A he is entitled to challenge the constitutionality of the entire statute "since he is charged with a violation under the Act." Acting upon that premise, he proceeds to attack separately what he asserts are constitutional infirmities of certain features of the Act. His claims are that the Act fails to provide adequate procedural safeguards (although he noted that Sec. 19 of Art. 66A affords an appeal to the Baltimore City Court and thence to this Court); that the standards established by Sec. 6[2] of the

---

2. "§ 6. (a) *Board to examine, approve or disapprove films.*—The Board shall examine or supervise the examination of all films or views to be exhibited or used in the State of Maryland and shall approve and license such films or views which are moral and proper, and shall disapprove such as are obscene, or such as tend, in the judgment of the Board, to debase or corrupt morals or incite to crimes. * * *

"(b) *What films considered obscene.*—For the purpose of this article, a motion picture film or view shall be considered to be obscene if, when considered as a whole, its calculated purpose or dominant effect is substantially to arouse sexual desires, and if the probability of this effect is so great as to outweigh whatever other merits the film may possess.

"(c) *What films tend to debase or corrupt morals.*—For the purposes of this article, a motion picture film or view shall be considered to be of such a character that its exhibition would tend to debase or corrupt morals if its dominant purpose or effect is erotic or pornographic; or if it portrays acts of sexual immorality, lust or lewdness, or if it expressly or impliedly presents such acts as desirable, acceptable or proper patterns of behavior.

"(d) *What films tend to incite to crime.*—For the purposes of this article, a motion picture film or view shall be considered of such a character that its exhibition would tend to incite to crime if the theme or the manner of its presentation presents the commission of criminal acts or contempt for law as constituting profitable, desirable, acceptable, respectable or commonly accepted behavior, or if it advocates or teaches the use of, or the methods of use of, narcotics or habit-forming drugs."

Act are vague and hence invalid as construed and applied; that the statute deprives him of equal protection of the law in that newsreels and noncommercial exhibitors such as educational, charitable, fraternal and religious organizations are excluded from the operation of the Act; and that the fee charged for the inspection and licensing of a film constitutes an invalid tax upon the exercise of freedom of speech.

The State maintained below and here that the statute is not void on its face, and that since the appellant did not submit his film to the Board for approval and licensing he lacks standing to challenge any provision or requirement of Art. 66A, except the provisions of Sec. 2, for violation of which he was convicted. The trial court agreed with the position of the State. Parenthetically, it is noted that neither the appellant nor the State even suggests that the film "Revenge at Daybreak" would violate any of the standards set out in the statute, and the State conceded that it would have been approved had it been submitted for licensing.

We shall first consider the appellant's main attack—that the Maryland statute is void on its face as an unconstitutional prior restraint imposed upon the freedoms of speech and press protected against State action by the First and Fourteenth Amendments and by Art. 40 of the Maryland Declaration of Rights.

The Supreme Court of the United States, in *Joseph Burstyn, Inc. v. Wilson*, 343 U. S. 495, 96 L. Ed. 1098 (1952), held that motion pictures are within the ambit of protection which the First Amendment, through the Fourteenth, affords to speech and the press, and struck down the use of "sacrilegious" as a permissible censorship standard. However, the Court intimated that some form of censorship might be permissible when it said (at p. 502 of 343 U. S.) : "To hold that liberty of expression by means of motion pictures is guaranteed by the First and Fourteenth Amendments, however, is not the end of our problem. It does not follow that the Constitution requires absolute freedom to exhibit every motion picture of every kind at all times and all places. That much is evident from the series of decisions of this Court with respect to other media of communication of ideas." The Court further stated (*ibid.*) in considering the argument that motion pictures possess a greater ca-

pacity for evil, particularly among the youth of a community, than other modes of expression: "If there be capacity for evil it may be relevant in determining the permissible scope of community control, but it does not authorize substantially unbridled censorship such as we have here." Subsequent to *Burstyn,* a number of film censorship cases reached the Supreme Court which involved questions of standards. The films in those cases had all been submitted to the appropriate authorities and permits for their exhibition were refused because of their content. Thus those cases are not apposite here and will not be reviewed.

In 1961, in *Times Film Corp. v. Chicago,* 365 U. S. 43, 5 L. Ed. 2d 403, the question whether or not the constitutional guaranty of freedom of speech and of the press was violated by prior censorship was placed squarely before the Supreme Court. The appellant in that case, a motion picture exhibitor, challenged the validity of an ordinance of the City of Chicago which, as a prerequisite to public exhibition, required the submission of films to a censor. The exhibitor applied for a permit and tendered the license fee, as required by the ordinance, but refused to submit the film for examination. The permit was denied solely because of the refusal to submit the film. The exhibitor sought injunctive relief, challenging the ordinance on the ground that the First Amendment guaranties were violated by the prior censorship requirement, thus rendering the ordinance void on its face. The Supreme Court found that the attack was an attempt to have the Court hold that the public exhibition of motion pictures must be permitted under any circumstances, and that previous restraint cannot be justified regardless of the capacity of motion pictures for evil, or the extent thereof. In rejecting that contention, the Court said (pp. 49-50 of 365 U. S.):

> "With this we cannot agree. We recognized in *Burstyn, supra,* that 'capacity for evil . . . may be relevant in determining the permissible scope of community control,' at p. 502, and that motion pictures were not 'necessarily subject to the precise rules governing any other particular method of expression. Each method,'

we said, 'tends to present its own peculiar problems.' At p. 503. Certainly petitioner's broadside attack does not warrant, nor could it justify on the record here, our saying that—aside from any consideration of the other 'exceptional cases' mentioned in our decisions—the State is stripped of all constitutional power to prevent, in the most effective fashion, the utterance of this class of speech. It is not for this Court to limit the State in its selection of the remedy it deems most effective to cope with such a problem, *absent, of course, a showing of unreasonable strictures on individual liberty resulting from its application in particular circumstances.*" (Emphasis supplied.)

In affirming the dismissal of the exhibitor's complaint, the Supreme Court held that the requirement of Chicago's ordinance for submission of films prior to their public exhibition was not void on its face as an invasion of the constitutional guaranties.

The Supreme Court's refusal to strike down all prior censorship of motion pictures was recognized and restated last year in *Bantam Books Inc. v. Sullivan,* 372 U. S. 58, 9 L. Ed. 2d 584 (1963). In that case the court found unconstitutional a Rhode Island agency formed to screen books and magazines and to recommend the prosecution of violators of appropriate statutes, on the ground that the Act creating the agency did not require proper judicial superintendence. However, the court said, in Footnote 10 of *Bantam* (at p. 70 of 372 U. S.) :

"Nothing in the Court's opinion in *Times Film Corp. v. Chicago,* 365 U. S. 43, is inconsistent with the Court's traditional attitude of disfavor toward prior restraints of expression. The only question tendered to the Court in that case was whether a prior restraint was necessarily unconstitutional *under all circumstances.* In declining to hold prior restraints unconstitutional *per se,* the Court did not uphold the constitutionality of any specific such restraint. Furthermore, the holding was expressly confined to motion pictures." (Emphasis by Court.)

We conclude that on the authority of the *Times Film* case, *supra,* the Maryland censorship law must be held to be not void on its face as violative of the freedoms protected against State action by the First and Fourteenth Amendments. However, the appellant also argues that the statute is in conflict with Art. 40 of the Maryland Declaration of Rights, which provides:

> "That the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege."

We find no merit in this argument. The right to speak and print, protected by Art. 40, is not absolute. This Court has held that the liberty of the press does not include the privilege of taking advantage of the incarceration of a person accused of crime to photograph his face and figure against his will. *Ex Parte Sturm,* 152 Md. 114, 120, 136 Atl. 312 (1927). The guaranty of freedom of speech and press ordained in Art. 40 would appear to be, in legal effect, substantially similar to that enunciated in the First Amendment, and it is significant that Art. 40 has been treated by this Court as in *pari materia* with the First Amendment. See, for example, *Police Comm'r v. Siegel, etc., Inc.,* 223 Md. 110, 128, 162 A. 2d 727 (1960); *Baltimore v. A. S. Abell Co.,* 218 Md. 273, 289, 145 A. 2d 111 (1958). We therefore see no reason why Art. 40 should be interpreted differently from the First Amendment.

We think the State is correct in its contention that since the appellant chose to mount his attack on the constitutionality of motion picture censorship in Maryland by refusing to submit his film to the Board as required by Sec. 2 of Art. 66A (for which alone he was indicted), he has restricted himself to an attack on that section alone, and lacks standing to challenge any of the other provisions (or alleged shortcomings) of the statute. The appellant's contention that the entire Act is subject to challenge when the State seeks a criminal conviction for failure to comply with a single provision of it is untenable. The indictment did not involve procedures or standards under other

sections of the Act, or any of the other matters sought to be raised by the appellant, and thus there was no ripe and justiciable issue as to such matters before the trial court, and there is none before us. Other avenues—such as an action for injunctive or declaratory relief—are open to the appellant for the determination of such issues when he is faced with invasion of his rights.

In *Hammond v. Lancaster,* 194 Md. 462, 71 A. 2d 474 (1950), Judge Henderson, for the Court, reviewed the authorities dealing with the matter of standing to seek a judicial determination of a constitutional question in advance of the necessity for its decision. He pointed out that the Supreme Court, in *Federation of Labor v. McAdory,* 325 U. S. 450, 89 L. Ed. 1725 (1945), dismissed the writ of *certiorari* which it had issued in a case brought in the Alabama State court against enforcement officers for a declaratory judgment adjudicating the constitutionality of an Alabama Act which, it was contended, violated rights of free speech, due process and equal protection, and was vague and indefinite, and he quoted Chief Justice Stone as saying, "* * * this Court has felt bound to delay passing on 'the constitutionality of all the separate phases of a comprehensive statute until faced with cases involving particular provisions as specifically applied to persons who claim to be injured.' " To the same effect are *Hitchcock v. Kloman,* 196 Md. 351, 76 A. 2d 582 (1950) ; *Tanner v. McKeldin,* 202 Md. 569, 580, 97 A. 2d 449 (1953) ; *Givner v. Cohen,* 208 Md. 23, 37, 116 A. 2d 357 (1955), and *Dutton v. Tawes,* 225 Md. 484, 171 A. 2d 688 (1961), app. dism. 368 U. S. 345, 7 L. Ed. 2d 342, in the last of which cases Judge Hammond, for the Court, said (at p. 501 of 225 Md.) : "In the view we take of the case, however, we think appellants are not entitled to have a declaration as to the constitutionality of the compact in operation. They have not shown that they are engaged in or faced with actual controversy, or that the issues are ripe and justiciable, so as to be able to call upon the courts to exercise the declaratory process. * * *" For the latest case in which this Court has had occasion to consider the question of standing to raise issues, see *Citizens Comm. v. Anne Arundel Co.,* 233 Md. 398, 197 A. 2d 108 (1964).

The appellant relies strongly upon the cases of *Staub v. Baxley*, 355 U. S. 313, 2 L. Ed. 2d 302 (1958), and *Lovell v. Griffin*, 303 U. S. 444, 82 L. Ed. 949 (1938), to support his claim that he has standing to attack provisions of the Act other than Sec. 2. However, these cases are distinguishable. In each, the Supreme Court expressly found that the ordinance involved was void *on its face*, whereas the Chicago ordinance, substantially similar to the Maryland statute, was held not to be void on its face in *Times Film, supra*.

We hold that the requirement of Art. 66A, Sec. 2, that films be submitted to the Censor Board for approval and licensing before public exhibition, is not void on its face and is valid and enforceable. We also hold that, in this case, the appellant had no standing to question other portions of the statute.

*Judgment affirmed; appellant to pay costs.*