## FREEDMAN *v.* MARYLAND.

No. 69. Argued November 19, 1964.—Decided March 1, 1965.

*Felix J. Bilgrey* argued the cause for appellant. With him on the brief were *Richard C. Whiteford* and *Louis H. Pollak.*

*Thomas B. Finan,* Attorney General of Maryland, argued the cause for appellee. With him on the brief were *Robert F. Sweeney* and *Roger D. Redden,* Assistant Attorneys General.

*Edward De Grazia* and *Melvin L. Wulf* filed a brief for the American Civil Liberties Union et al., as *amici curiae,* urging reversal.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Appellant sought to challenge the constitutionality of the Maryland motion picture censorship statute, Md. Ann. Code, 1957, Art. 66A, and exhibited the film "Revenge at Daybreak" at his Baltimore theatre without first submitting the picture to the State Board of Censors as required by § 2 thereof.[1] The State concedes that the picture does not violate the statutory standards[2] and

---

[1] Md. Ann. Code, 1957, Art. 66A, § 2:

"It shall be unlawful to sell, lease, lend, exhibit or use any motion picture film or view in the State of Maryland unless the said film or view has been submitted by the exchange, owner or lessee of the film or view and duly approved and licensed by the Maryland State Board of Censors, hereinafter in this article called the Board."

[2] Md. Ann. Code, 1957, Art. 66A, § 6:

"(a) *Board to examine, approve or disapprove films* —The Board shall examine or supervise the examination of all films or views to be exhibited or used in the State of Maryland and shall approve and license such films or views which are moral and proper, and shall disapprove such as are obscene, or such as tend, in the judgment of the Board, to debase or corrupt morals or incite to crimes. All films exclusively portraying current events or pictorial news of the day, commonly called news reels, may be exhibited without examination and no license or fees shall be required therefor.

"(b) *What films considered obscene.*—For the purposes of this article, a motion picture film or view shall be considered to be obscene if, when considered as a whole, its calculated purpose or dominant effect is substantially to arouse sexual desires, and if the probability

would have received a license if properly submitted, but the appellant was convicted of a § 2 violation despite his contention that the statute in its entirety unconstitutionally impaired freedom of expression. The Court of Appeals of Maryland affirmed, 233 Md. 498, 197 A. 2d 232, and we noted probable jurisdiction, 377 U. S. 987. We reverse.

## I.

In *Times Film Corp.* v. *City of Chicago,* 365 U. S. 43, we considered and upheld a requirement of submission of motion pictures in advance of exhibition. The Court of Appeals held, on the authority of that decision, that "the Maryland censorship law must be held to be not void on its face as violative of the freedoms protected against State action by the First and Fourteenth Amendments." 233 Md., at 505, 197 A. 2d, at 235. This reliance on *Times Film* was misplaced. The only question tendered for decision in that case was "whether a prior restraint was necessarily unconstitutional *under all circumstances." Bantam Books, Inc.* v. *Sullivan,* 372 U. S. 58, 70, n. 10

---

of this effect is so great as to outweigh whatever other merits the film may possess.

"(c) *What films tend to debase or corrupt morals.*—For the purposes of this article, a motion picture film or view shall be considered to be of such a character that its exhibition would tend to debase or corrupt morals if its dominant purpose or effect is erotic or pornographic; or if it portrays acts of sexual immorality, lust or lewdness, or if it expressly or impliedly presents such acts as desirable, acceptable or proper patterns of behavior.

"(d) *What films tend to incite to crime.*—For the purposes of this article, a motion picture film or view shall be considered of such a character that its exhibition would tend to incite to crime if the theme or the manner of its presentation presents the commission of criminal acts or contempt for law as constituting profitable, desirable, acceptable, respectable or commonly accepted behavior, or if it advocates or teaches the use of, or the methods of use of, narcotics or habit-forming drugs."

(emphasis in original). The exhibitor's argument that the requirement of submission without more amounted to a constitutionally prohibited prior restraint was interpreted by the Court in *Times Film* as a contention that the "constitutional protection includes complete and absolute freedom to exhibit, at least once, any and every kind of motion picture . . . even if this film contains the basest type of pornography, or incitement to riot, or forceful overthrow of orderly government . . . ." 365 U. S., at 46, 47. The Court held that on this "narrow" question, *id.,* at 46, the argument stated the principle against prior restraints too broadly; citing a number of our decisions, the Court quoted the statement from *Near* v. *Minnesota,* 283 U. S. 697, 716, that "the protection even as to previous restraint is not absolutely unlimited." In rejecting the proffered proposition in *Times Film* the Court emphasized, however, that "[i]t is that question alone which we decide," 365 U. S., at 46, and it would therefore be inaccurate to say that *Times Film* upheld the specific features of the Chicago censorship ordinance.

Unlike the petitioner in *Times Film,* appellant does not argue that § 2 is unconstitutional simply because it may prevent even the first showing of a film whose exhibition may legitimately be the subject of an obscenity prosecution. He presents a question quite distinct from that passed on in *Times Film;* accepting the rule in *Times Film,* he argues that § 2 constitutes an invalid prior restraint because, in the context of the remainder of the statute, it presents a danger of unduly suppressing protected expression. He focuses particularly on the procedure for an initial decision by the censorship board, which, without any judicial participation, effectively bars exhibition of any disapproved film, unless and until the exhibitor undertakes a time-consuming appeal to the Maryland courts and succeeds in having the Board's deci-

sion reversed. Under the statute, the exhibitor is required to submit the film to the Board for examination, but no time limit is imposed for completion of Board action, § 17. If the film is disapproved, or any elimination ordered, § 19 provides that

> "the person submitting such film or view for examination will receive immediate notice of such elimination or disapproval, and if appealed from, such film or view will be promptly re-examined, in the presence of such person, by two or more members of the Board, and the same finally approved or disapproved promptly after such re-examination, with the right of appeal from the decision of the Board to the Baltimore City Court of Baltimore City. There shall be a further right of appeal from the decision of the Baltimore City Court to the Court of Appeals of Maryland, subject generally to the time and manner provided for taking appeal to the Court of Appeals."

Thus there is no statutory provision for judicial participation in the procedure which bars a film, nor even assurance of prompt judicial review. Risk of delay is built into the Maryland procedure, as is borne out by experience; in the only reported case indicating the length of time required to complete an appeal, the initial judicial determination has taken four months and final vindication of the film on appellate review, six months. *United Artists Corp.* v. *Maryland State Board of Censors,* 210 Md. 586, 124 A. 2d 292.

In the light of the difference between the issues presented here and in *Times Film,* the Court of Appeals erred in saying that, since appellant's refusal to submit the film to the Board was a violation only of § 2, "he has restricted himself to an attack on that section

alone, and lacks standing to challenge any of the other provisions (or alleged shortcomings) of the statute." 233 Md., at 505, 197 A. 2d, at 236. Appellant has not challenged the submission requirement in a vacuum but in a concrete statutory context. His contention is that § 2 effects an invalid prior restraint because the structure of the other provisions of the statute contributes to the infirmity of § 2; he does not assert that the other provisions are independently invalid.

In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license. "One who might have had a license for the asking may . . . call into question the whole scheme of licensing when he is prosecuted for failure to procure it." *Thornhill* v. *Alabama,* 310 U. S. 88, 97; see *Staub* v. *City of Baxley,* 355 U. S. 313, 319; *Saia* v. *New York,* 334 U. S. 558; *Thomas* v. *Collins,* 323 U. S. 516; *Hague* v. *CIO,* 307 U. S. 496; *Lovell* v. *City of Griffin,* 303 U. S. 444, 452–453. Standing is recognized in such cases because of the ". . . danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application." *NAACP* v. *Button,* 371 U. S. 415, 433; see also Amsterdam, Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67, 75–76, 80–81, 96–104 (1960). Although we have no occasion to decide whether the vice of overbroadness infects the Maryland statute,[3] we think that appellant's assertion of a similar

[3] Appellant also challenges the constitutionality of § 6, establishing standards, as invalid for vagueness under the Due Process Clause; § 11, imposing fees for the inspection and licensing of a film, as consti-

danger in the Maryland apparatus of censorship—one always fraught with danger and viewed with suspicion— gives him standing to make that challenge. In substance his argument is that, because the apparatus operates in a statutory context in which judicial review may be too little and too late, the Maryland statute lacks sufficient safeguards for confining the censor's action to judicially determined constitutional limits, and therefore contains the same vice as a statute delegating excessive administrative discretion.

## II.

Although the Court has said that motion pictures are not "necessarily subject to the precise rules governing any other particular method of expression," *Joseph Burstyn, Inc.* v. *Wilson,* 343 U. S. 495, 503, it is as true here as of other forms of expression that "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc.* v. *Sullivan, supra,* at 70. ". . . [U]nder the Fourteenth Amendment, a State is not free to adopt whatever procedures it pleases for dealing with obscenity . . . without regard to the possible consequences for constitutionally protected speech." *Marcus* v. *Search Warrant,* 367 U. S. 717, 731. The administration of a censorship system for motion pictures presents peculiar dangers to constitutionally protected speech. Unlike a prosecution for obscenity, a censorship proceeding puts the initial burden on the exhibitor or distributor. Because the censor's business is to censor, there inheres the danger that he may well be less responsive than a court— part of an independent branch of government—to the

tuting an invalid tax upon the exercise of freedom of speech; and § 23, allowing exemptions to various classes of exhibitors, as denying him the equal protection of the laws. In view of our result, we express no views upon these claims.

constitutionally protected interests in free expression.[4] And if it is made unduly onerous, by reason of delay or otherwise, to seek judicial review, the censor's determination may in practice be final.

Applying the settled rule of our cases, we hold that a noncriminal process which requires the prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. First, the burden of proving that the film is unprotected expression must rest on the censor. As we said in *Speiser* v. *Randall,* 357 U. S. 513, 526, "Where the transcendent value of speech is involved, due process certainly requires . . . that the State bear the burden of persuasion to show that the appellants engaged in criminal speech." Second, while the State may require advance submission of all films, in order to proceed effectively to bar all showings of unprotected films, the requirement cannot be administered in a manner which would lend an effect of finality to the censor's determination whether a film constitutes protected expression. The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint. See *Bantam Books, Inc.* v. *Sullivan, supra; A Quantity of Books* v. *Kansas,* 378 U. S. 205; *Marcus* v. *Search Warrant, supra; Manual Enterprises, Inc.* v. *Day,* 370 U. S. 478, 518–519. To this end, the exhibitor must be assured, by

---

[4] See Emerson, The Doctrine of Prior Restraint, 20 Law & Contemp. Prob. 648, 656–659 (1955). This is well illustrated by the fact that the Maryland Court of Appeals has reversed the Board's disapproval in every reported case. *United Artists Corp.* v. *Maryland State Board of Censors, supra; Maryland State Board of Censors* v. *Times Film Corp.,* 212 Md. 454, 129 A. 2d 833; *Fanfare Films, Inc.* v. *Motion Picture Censor Board,* 234 Md. 10, 197 A. 2d 839.

statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. Moreover, we are well aware that, even after expiration of a temporary restraint, an administrative refusal to license, signifying the censor's view that the film is unprotected, may have a discouraging effect on the exhibitor. See *Bantam Books, Inc.* v. *Sullivan, supra.* Therefore, the procedure must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license.

Without these safeguards, it may prove too burdensome to seek review of the censor's determination. Particularly in the case of motion pictures, it may take very little to deter exhibition in a given locality. The exhibitor's stake in any one picture may be insufficient to warrant a protracted and onerous course of litigation. The distributor, on the other hand, may be equally unwilling to accept the burdens and delays of litigation in a particular area when, without such difficulties, he can freely exhibit his film in most of the rest of the country; for we are told that only four States and a handful of municipalities have active censorship laws.[5]

It is readily apparent that the Maryland procedural scheme does not satisfy these criteria. First, once the censor disapproves the film, the exhibitor must assume

---

[5] An appendix to the brief *amici curiae* of the American Civil Liberties Union and its Maryland Branch lists New York, Virginia and Kansas as the three States having statutes similar to the Maryland statute, and the cities of Chicago, Detroit, Fort Worth and Providence as having similar ordinances. Twenty-eight of the remaining 39 municipal ordinances and codes are listed as "inactive."

the burden of instituting judicial proceedings and of persuading the courts that the film is protected expression. Second, once the Board has acted against a film, exhibition is prohibited pending judicial review, however protracted. Under the statute, appellant could have been convicted if he had shown the film after unsuccessfully seeking a license, even though no court had ever ruled on the obscenity of the film. Third, it is abundantly clear that the Maryland statute provides no assurance of prompt judicial determination. We hold, therefore, that appellant's conviction must be reversed. The Maryland scheme fails to provide adequate safeguards against undue inhibition of protected expression, and this renders the § 2 requirement of prior submission of films to the Board an invalid previous restraint.

### III.

How or whether Maryland is to incorporate the required procedural safeguards in the statutory scheme is, of course, for the State to decide. But a model is not lacking: In *Kingsley Books, Inc.* v. *Brown,* 354 U. S. 436, we upheld a New York injunctive procedure designed to prevent the sale of obscene books. That procedure postpones any restraint against sale until a judicial determination of obscenity following notice and an adversary hearing. The statute provides for a hearing one day after joinder of issue; the judge must hand down his decision within two days after termination of the hearing. The New York procedure operates without prior submission to a censor, but the chilling effect of a censorship order, even one which requires judicial action for its enforcement, suggests all the more reason for expeditious determination of the question whether a particular film is constitutionally protected.

The requirement of prior submission to a censor sustained in *Times Film* is consistent with our recognition

that films differ from other forms of expression. Similarly, we think that the nature of the motion picture industry may suggest different time limits for a judicial determination. It is common knowledge that films are scheduled well before actual exhibition, and the requirement of advance submission in § 2 recognizes this. One possible scheme would be to allow the exhibitor or distributor to submit his film early enough to ensure an orderly final disposition of the case before the scheduled exhibition date—far enough in advance so that the exhibitor could safely advertise the opening on a normal basis. Failing such a scheme or sufficiently early submission under such a scheme, the statute would have to require adjudication considerably more prompt than has been the case under the Maryland statute. Otherwise, litigation might be unduly expensive and protracted, or the victorious exhibitor might find the most propitious opportunity for exhibition past. We do not mean to lay down rigid time limits or procedures, but to suggest considerations in drafting legislation to accord with local exhibition practices, and in doing so to avoid the potentially chilling effect of the Maryland statute on protected expression.

*Reversed.*

MR. JUSTICE DOUGLAS, whom MR. JUSTICE BLACK joins, concurring.

On several occasions I have indicated my view that movies are entitled to the same degree and kind of protection under the First Amendment as other forms of expression. *Superior Films* v. *Department of Education,* 346 U. S. 587, 588; *Kingsley Pictures Corp.* v. *Regents,* 360 U. S. 684, 697; *Times Film Corp.* v. *Chicago,* 365 U. S. 43, 78.* For the reasons there stated, I do not

---

*The Court today holds that a system of movie censorship must contain at least three procedural safeguards if it is not to run afoul

62

believe any form of censorship—no matter how speedy or prolonged it may be—is permissible. As I see it, a pictorial presentation occupies as preferred a position as any other form of expression. If censors are banned from the publishing business, from the pulpit, from the public platform—as they are—they should be banned from the theatre. I would not admit the censor even for the limited role accorded him in *Kingsley Books, Inc.* v. *Brown*, 354 U. S. 436. I adhere to my dissent in that case. *Id.,* at 446–447. Any authority to obtain a temporary injunction gives the State "the paralyzing power of a censor." *Id.,* at 446. The regime of *Kingsley Books* "substitutes punishment by contempt for punishment by jury trial." *Id.,* at 447. I would put an end to all forms and types of censorship and give full literal meaning to the command of the First Amendment.

of the First Amendment: (1) the censor must have the burden of instituting judicial proceedings; (2) any restraint prior to judicial review can be imposed only briefly in order to preserve the status quo; and (3) a prompt judicial determination of obscenity must be assured. Thus the Chicago censorship system, upheld by the narrowest of margins in *Times Film Corp.* v. *Chicago*, 365 U. S. 43, could not survive under today's standards, for it provided not one of these safeguards, as the dissenters there expressly pointed out. *Id.,* at 73–75.