GROVE PRESS, INC., Plaintiff,

v.

STATE OF KANSAS, James W. Bouska and Herbert W. Walton, Defendants.

LAKESIDE DRIVE IN THEATER, INC., Plaintiff,

v.

Francis D. MENGHINI, Individually and as County Attorney of Wyandotte County, Kansas; O. Q. Claflin, III, Judge of the District Court of Wyandotte County, Kansas, Division 1; Harry G. Miller, Judge of the District Court of Wyandotte County, Kansas, Division 3; Leo J. Moroney, Judge of the District Court of Wyandotte County, Kansas, Division 5; and the State of Kansas, Defendants.

Nos. KC–2992, 2997.

United States District Court
D. Kansas.

Dec. 17, 1969.

Stuart D. Mitchelson, of Pflumm, Mitchelson & Amrein, Shawnee Mission, Kan., Walter J. Kennedy, of Hoskins, King, Springer, McGannon & Hahn, Robert B. Olsen, of Olsen & Talpers and Irving Achtenberg, of Achtenberg, Sandler & Balkin, Kansas City, Mo., for plaintiff Grove Press, Inc.

Kent Frizzell, Atty. Gen. and Richard H. Seaton, Asst. Atty. Gen., Topeka, Kan., for defendant State of Kansas.

James W. Bouska, County Atty., Olathe, Kan., pro se and for defendant State of Kansas; Bernis G. Terry, Asst. County Atty., Olathe, Kan., for defendants James W. Bouska and State of Kansas.

Eugene T. Hackler and Robert C. Londerholm, of Hackler, Anderson, Londerholm, Speer & Vader, Olathe, Kan., for defendant Herbert W. Walton.

Charles P. Fleming, Jr., Mission, Kan., and Kenneth E. Bigus, Kansas City, Mo., for plaintiff Lakeside Drive In Theater, Inc.

Francis D. Menghini, County Atty., Kansas City, Kan., pro se, and with Jerome S. Koehler, Jr., Asst. County Atty., Kansas City, Kan., for defendants O. Q. Claflin, III, Harry G. Miller and Leo J. Moroney.

Before HICKEY, Circuit Judge, and STANLEY and THEIS, District Judges.

## SUPPLEMENTAL OPINION

### PER CURIAM.

The plaintiff Lakeside Drive In Theater, Inc. moves to alter or amend the judgment entered in this action October 6, 1969, 304 F.Supp. 383, asserting that the court in its opinion did not discuss Lakeside's contention that the state court had allowed inadequate time for preparation for the hearings which preceded the seizure of the films being exhibited by Lakeside.

We acknowledge this omission as charged in plaintiff's motion. Although we deny Lakeside's motion, it is entitled to a statement of our views.

Lakeside does not here contend that the material—the films themselves—were not obscene. It argues only that the Kansas statute is unconstitutional and claims that even if valid it was unconstitutionally applied.

A reading of the stipulation of facts entered into between Lakeside and the defendants reveals that the time interval between notice and entry of the seizure order in the state courts was less in the several instances in the Lakeside case than in the *Grove Press* case. The question presented to the Johnson County court in the *Grove Press* case differed from that confronting the Wyandotte County court in each of the proceedings involving the films exhibited by Lakeside.

Grove Press owned the film "I Am Curious (Yellow)." It was being shown in a conventional theater. It could be viewed only by those who sought admission to the theater. The operator of the theater at least paid lip service to the admonition of Judge Friendly in his concurring opinion in United States v. A Motion Picture Film, 404 F.2d 196 at

202 (2d Cir.1968).* In the *Grove Press* case, there was one state court proceeding dealing with one film. In the *Lakeside* case, there were five separate state court proceedings. Each involved a separate film, or, in one case, the previews of two productions. The material differed but the manner and circumstances of exhibition were the same in each—the same screen in the same location. The Wyandotte County court, in considering Lakeside's films, had to deal individually with the quality of the material in the abstract although the manner of dissemination was common to all.

Lakeside operated a drive-in theater on grounds bordered on two sides by public highways and situated near a public park containing recreational facilities used by families and by children. The screen upon which the films in question were shown was easily visible for a distance of at least one-half mile. These facts were known to the Wyandotte County court, and in its consideration of each of the five films exhibited by Lakeside that court was not limited in its application of the *Roth* test. It was permitted to recognize the state's special concern for the protection of children. See Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944). It was free also to determine, as did Justice Stewart, specially concurring in Ginsberg v. New York, 390 U.S. 629, 649–650, 88 S.Ct. 1274, 1286, 20 L. Ed.2d 195 (1968), that, "* * * a child —like someone in a captive audience—is not possessed of that full capacity for individual choice which is the presupposition of First Amendment guarantees."

The operator of a drive-in theater, the screen of which may be seen by other than voluntary patrons, utilizes the community, including its children, as its captive audience. Any threat to free-

---

* "What we ought to make plain, however, and not at all in a 'tongue-in-cheek' fashion, is that our ruling is limited in two respects: The importer has represented that it intends to require exhibitors to exclude minors from the audience; it

must realize that if this representation should be violated, the film and its distributors and exhibitors will be subject to attack under the principal of Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968)."

dom of expression is outweighed by the social interest in the regulation of such activities whether for profit, as here, or otherwise. Access to books may to a large extent be controlled by the parents of children. The likelihood that he may be harmed by exposure to the written word is limited by a child's capacity to read and understand what is written. A motion picture film presents its material graphically and in a form which requires no aptitude or training, and so possesses a greater capacity for good or evil among children.

The five state cases in the Wyandotte County District Court must be considered as segments of one articulated operation by Lakeside. While each was separately considered, the contest between Lakeside and the state began with the show cause order issued June 5 in the first case and ended with the seizure order entered in the last case. Insofar as the mode of distribution was concerned, the situation in each case was the same as in the other four. The circumstances of presentation and dissemination, identical in each of the *Lakeside* cases, were relevant to the application by the Wyandotte County court of the *Roth* test. Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966).

In the first *Lakeside* case in the Wyandotte County court (The Ramrodder), four days elapsed between the initial notice to Lakeside and the hearing. In at least two of the later cases, Lakeside was granted a 24-hour continuance. In no case did Lakeside present any evidence.

We hold that the procedures followed by the defendants in each of the cases involving Lakeside's films met the standards enunciated by the Supreme Court in Freedman v. Maryland, 380 U. S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), and in each instance provided for prompt judicial determination of the issue of obscenity of the films. The motion of Lakeside to alter or amend the judgment is denied.