Raymond GERENA, Ulises Rodriguez, Gil Rene–Rodriguez, Leo Vanelli, Frank Ramos, Producciones Gran Escenario, Inc., Producciones Teatro Caribeño, Inc. Plaintiffs

v.

Jorge SANTINI in his personal capacity and as Mayor of the Municipality of San Juan and the Municipality of San Juan Defendants

No. CIV. 03–1852CCC.

United States District Court, D. Puerto Rico.

Dec. 8, 2004.

**16**

Roberto O. Maldonado-Nieves, San Juan, PR, for Plaintiff.

Eric R. Ronda-Del-Toro, Juan B. Soto-Balbas, Mercado & Soto, San Juan, PR, for Defendant.

## ORDER

CEREZO, District Judge.

During the cross-examination of Dr. Fernado Gallardo, a witness announced by both plaintiffs and defendants who was during the relevant time period the Director of the Arts and Culture Department of the Municipality of San Juan, the Court held an extended informal sidebar which led to its adjourning in order to consider whether the line of questioning of Dr. Gallardo at that point in time should be allowed to continue. Defendants provided two Supreme Court cases which they understood would provide proper guidance.[1] A brief reference to Dr. Gallardo's entire testimony up to that point is required to place the matter in context.

He testified that in the year 2003 the Tapia Theater (Tapia), whose Board of Directors he chairs, did not have a set of rules for producers on the contents of presentations because the producers who presented performances at the Tapia are persons who they respect and they trust what will be presented. The rules that the Tapia had were general administrative rules such as calendaring. The two producers in this case had complied, according to his view, with these rules during past presentations in the sense of the deadline to submit a proposal or short description of what they were going to present and paying a retainer fee. He stated that because his Office and the Mayor's had received calls from people who were more or less upset with the musical performance "Chicos Cantando y Desnudos" in which plaintiffs appeared as dancers/singers, and because of certain statements by the Puerto Rico Police Superintendent reported in the press, he had security concerns. Due to these concerns, he held an extraordinary Board meeting with an attorney who advised them on freedom of expression. Neither the producers nor plaintiffs were invited to any Board meeting. Due to lingering concerns, he invited the Board members and the Police Commissioner of the Municipality of San Juan, Colonel Adalberto Mercado, to see the final rehearsal. Six of eight members attended; except for one Board member who told him that he had stayed for the entire play, the others did not. The Board members, with Dr. Gallardo as chairperson, and accompanied by Colonel Mercado, met at the theater lobby for fifteen minutes to discuss the play. A decision was reached by all

---

1. Those cases, *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), *Barnes v. Glen Theatre, Inc., et al*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), and *City of Erie, et al v. Pap's A.M., et al*, 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000), involved a constitutional challenge under the First Amendment to certain criminal statutes and/or ordinances. The Supreme Court upheld the constitutional validity of those statutes finding that they were content-neutral restrictions on symbolic speech. Defendants' reliance on these cases is misplaced, for none of the plaintiffs were criminally prosecuted for violation of the indecent exposure statutory provision of the Puerto Rico Penal Code, nor have they challenged the constitutionality of that statute.

members [2] that same night that "we should stop the presentation." Following the decision that night, the show was cancelled by a letter dated August 1, 2003. Dr. Gallardo identified a statutory provision of the Penal Code of Puerto Rico, 33 L.P.R.A. § 4074, on indecent exposure, which had been shown to him and the other Board members by Colonel Mercado during their discussion at the theater lobby. He testified that nobody was arrested that night. Nor were the actors or producers informed of the Board's concerns until the actual cancellation letter.

During the cross-examination, Dr. Gallardo stated that he invited Colonel Mercado to the rehearsal as Commissioner of Police so he could say whether there was something wrong as to violation of the law or the Penal Code. Immediately after saying this, he narrated his reaction to what he saw during the rehearsal, stating that the main thing that shocked him was the nudity. At that point, the Court called the attorneys to the sidebar. Defendants' attorneys explained that Dr. Gallardo would continue testifying about the conduct of the nude performers. Defendants' attorneys argued that Dr. Gallardo and the others were offended by the plaintiffs' indecent exposure which is a crime codified in § 4074 of the Puerto Rico Penal Code discussed the night the cancellation decision was made at the lobby.

The undersigned understood it necessary to re-read the allegations of the parties. Having read the amended complaint, the factual versions and legal theories of the parties set forth in the Joint Pre–Trial Memorandum, it is necessary to establish certain parameters regarding the presentation of evidence.[3] The plaintiffs allege that their First Amendment freedom of expression was violated by defendants' actions which constituted an invalid prior restraint and suppression of their theatrical performance without compliance with any procedural requirements. The defendants, confronted with such a claim, can allege and prove that the cancellation was unrelated to any prior restraint, for example, the lack of a valid contract, and/or that they complied with the necessary safeguards which validates their actions. Whether or not the reason behind the cancellation decision was because there was no valid contract between the Municipality of San Juan and the producers is a matter of proof. Whether or not defendants complied with the necessary requirements or safeguards established by the Supreme Court of the United States to validate a prior restraint is also a matter of proof. Both of these address plaintiffs' claim that there was indeed an invalid prior censorship which turned into a final action without providing any of the safeguards afforded by law. The Court in *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975), spelled out the rule, citing *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 739, 13 L.Ed.2d 649 (1965), "that a system of prior restraint avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system" and that "because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint." The Court observed at page 1247 that ". . . the burden of instituting judicial proceedings,

2. The two missing members reportedly joined this decision later although they never saw the play.

3. The producers of this musical play are no longer parties in this action.

and of proving that the material is unprotected, must rest on the censor ..." and "... any restraint prior to judicial review can be imposed only for a specified brief period ... only for the purpose of preserving the status quo ..." and "... a prompt final judicial determination must be assured." The Court further held that:

> The procedural shortcomings that form the basis for our decision are unrelated to the standard that the board applied. Whatever the reasons may have been for the board's exclusion of the musical, it could not escape the obligation to afford appropriate procedural safeguards. We need not decide whether the standard of obscenity applied by respondents or the courts below was sufficiently precise or substantively correct, or whether the production was in fact obscene [citations omitted]. The standard, whatever it may be, must be implemented under a system that assures prompt judicial review with a minimal restriction of First Amendment rights necessary under the circumstances.

*Id.*, at p. 1247–48.

The Supreme Court has clearly established the need for procedural safeguards which require that publications or other forms of expression not be banned unless the restraint operates "under judicial superintendence and assure[s] an almost immediate judicial determination of the validity of the restraint." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 638–39, 9 L.Ed.2d 584 (1963).

Accordingly, whether the Board's actions in canceling the performances in this case complied with the safeguards required by the Supreme Court is a matter that defendants cannot address by bringing the testimony of a person who participated in the cancellation decision to justify, after the fact, that the production was obscene. Whether the production was ob-

scene or whether it was a violation of a criminal statute prohibiting indecent exposure are factors that could have been presented by defendants to a court, in compliance with the procedural safeguards set forth by the U.S. Supreme Court which require judicial superintendence before the decision is made. It is irrelevant and too late in the day to make these arguments now and to present such proof in refuting a prior restraint claim under the First Amendment after the Board's decision became final. To rule otherwise would be contrary to the case law for the Court would be placing plaintiffs in limbo with regard to their right to procedural safeguards. Plaintiffs, who were not prosecuted criminally, never had the benefit of the safeguards of a criminal process, including proof beyond reasonable doubt, regarding criminal charges for indecent exposure. At the same time, defendants would be allowed to bring proof of obscenity at this late stage, even if they did not comply with the procedural requirements that have been established by the Supreme Court on prior restraint.

For these reasons, the Court concludes that any further testimony of Dr. Gallardo now justifying his decision and that of the Board to cancel the performance because it was obscene is irrelevant to the only constitutional violation claimed by plaintiffs, one strictly framed on the existence of an alleged unconstitutional prior restraint. The defense to such a claim, as clearly stated in *Southeastern Promotions, Ltd.*, 95 S.Ct. at 1248, is not "whether the production is, in fact, obscene." The issue, rather, is whether or not defendants incurred in the procedural shortcomings which would invalidate their decision under the First Amendment, as claimed by the plaintiffs.

For the reasons stated, the Court STRIKES that part of the testimony on

cross-examination of Dr. Gallardo in which he explains that he was shocked with what he saw and describes the sexual content of the songs and his reaction to their nudity. Defendants are advised that they are not allowed to continue with their line of questioning, with this witness or others, aimed at proving that the production was, in fact, obscene.

SO ORDERED.