**AMESBURY ENTERTAINMENT LLC, Plaintiff,**

v.

**William J. CROTEAU, Debra P. Dow, Esther F. Headley, Thomas K. Iacobucci, Leonard W. Johnson, Jr., Gerard Nolan, Alice Mainville, Albert B. Sears, Jr., Joseph E. Faro, as they Constitute the Amesbury Municipal Council, and the Town of Amesbury, Defendants.**

No. 99–CV–12073–MEL.

United States District Court, D. Massachusetts.

Nov. 22, 1999.

---

Morris M. Goldings, Mahoney, Hawkes & Goldings, Boston, MA, for plaintiff.

Jonathan M. Silverstein, Richard P. Bowen, Kopelman & Paige, Boston, MA, for Defendants.

*MEMORANDUM AND DECISION*

LASKER, District Judge.

Amesbury Entertainment, LLC has applied to the Town of Amesbury for an entertainment license, which will involve "nude dancing." The Supreme Court has held that "nude dancing ... is expressive conduct within the outer perimeters of the First Amendment, though we view it as only marginally so." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). Not every municipality to which such an application is made receives it enthusiastically, and the Town of Amesbury (the "Town") may be no exception. However that may be, this case does not have to do with the preferences of the Town, but whether its denial of plaintiff's application is legally sufficient. Plaintiff claims that the denial has deprived it of its constitutional rights under the First Amendment and moves for a preliminary injunction ordering the Town to grant the license. It argues that M.G.L. ch. 140, § 183A, the statute gov-

erning the issuance of licenses by municipalities for entertainment, is unconstitutional on its face as vague and overbroad and that, even if the statute is constitutional on its face, the Town has unconstitutionally applied it in the case at hand.

The reasons given by the Municipal Council (the licensing agency of the Town) referred to below as the Town for denial of the application are, in its own words, the following:

[T]he applicant did not satisfy the requirements of Massachusetts general Laws, Chapter 140, section 183A in that it failed to show:

1. That it can adequately protect employees, patrons and members of the public outside or inside the premises from disruptive conduct, from criminal activity or from health, safety and fire hazards.

2. That it has not shown that it can prevent an unreasonable increase in the level of noise in the area caused by the licensing activity or caused by patrons entering or leaving the premise.

3. It did not show that it can prevent an unreasonable increase in the level of pedestrian or vehicular traffic in the area of the premises or an unreasonable increase in the number of vehicles to be parked in the area of the premise.

Before reaching its conclusions, the Town presented a host of sub-arguments which are examined, if somewhat tediously, one by one in the discussion which follows. Before reaching those arguments, however, it is necessary to consider the constitutionality of M.G.L. ch. 140, § 183A on its face.

I.

█ The relevant language of the statute provides that:

The licensing authorities shall grant a license under this section unless they find that the license, taken alone or in combination with other licensed activities on the premises, would adversely affect the public health, safety or order, in that the concert, dance, exhibition, cabaret, or public show cannot be conducted in a manner so as to: (a) protect employees, patrons, and members of the public inside or outside the premises from disruptive conduct, from criminal activity, or from health, safety or fire hazards; (b) prevent an unreasonable increase in the level of noise in the area caused by the licensed activity or caused by patrons entering or leaving the premises; or (c) prevent an unreasonable increase in the level of pedestrian or vehicular traffic in the area of the premises or an unreasonable increase in the number of vehicles to be parked in the area of the premises.

M.G.L. ch. 140, § 183A.

The plaintiff argues that the statute is unconstitutional on its face because it fails to meet the criteria for upholding a law subjecting First Amendment freedoms to a prior restraint explained in *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) and *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). It contends that the statute does not meet these criteria because it fails to "impose adequate standards" for officials to apply in rendering a decision to grant or deny a license. *Shuttlesworth*, 394 U.S. at 150–51, 89 S.Ct. 935, provides that "a law subjecting the exercise of First Amendment freedoms to prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional."

The Town responds that the First Circuit's decision in *Fantasy Book Shop Inc. v. City of Boston*, 652 F.2d 1115, 1122–23 (1st Cir.1981) settles the question in its favor. In *Fantasy Book Shop*, the Court of Appeals upheld provisions of a Boston city ordinance whose standards were strikingly similar to those of M.G.L. ch. 140, § 183A. As with § 183A, so the provisions of the Boston ordinance provided that ap-

plications could be denied based on increased noise and traffic or an increase in the incidence of disruptive conduct in the area in which the premises are located.

Both the provisions of § 183A, at issue here, and the provisions of the ordinance upheld in *Fantasy Book Shop* can be applied in a narrow and objective manner. In holding that these provisions of the ordinance were facially constitutional, the First Circuit commented that "where a standard is not so vague that reasonably intelligent people 'must necessarily guess at its meaning,' we must presume that the state courts will give it a limiting construction that will preserve its facial constitutionality." Here, there can be no doubt that a reasonably intelligent person would not have to guess as to the meaning of the standards set forth in § 183A. As the provisions of the ordinance in *Fantasy Book Shop* were constitutional on their face, so § 183A is facially valid.

## II.

### The Alleged Deficiencies in the Application

*Standard of Review*

■ When a decision to deny a license is made under a facially neutral statute that implicates the applicant's First Amendment rights, this decision is reviewed by a federal court to determine whether the reasons supporting the license's denial are "fairly within the permissible statutory standard[s]" and that there is "some empirical basis for the projections on which [the licensing authority] relies." *Fantasy*, at 1125. Here, while the standard chosen is important in framing the issue, it would not determine the outcome. In final analysis, the licensing authority must have a reason permissible under the statute and supported by some evidence in the record to deny a license. Here, the Town has not demonstrated that it has such a reason.

### The Alleged Failure to Provide Adequate Security Measures

■ As indicated above, M.G.L. ch. 140, § 183A requires a licensing authority to grant a license to the applicant "unless" it finds that to do so "would adversely affect the public health, safety or order in that the—show cannot be conducted in a manner so as to: (a) protect employees, patrons, and members of the public inside or outside the premises from disruptive conduct, from criminal activity, or from health, safety or fire hazards[.]"

The following discussion deals with the reasons (and the facts that support these reasons) articulated by the Town as to why, in its opinion, the proposed activity could not be conducted in a safe and non-disruptive way. As discussed in detail below, these facts provide no empirical basis for the Town's determination that the proposed activity could not be conducted in a safe and non-disruptive way. Each point is set forth separately, together with the response of the plaintiff and the conclusion of the Court:

i. Plaintiff's "Admission" of Special Security Concerns

The Town contends that "the applicant admitted that adult entertainment establishments present special security concerns for the security of the performers." The plaintiff concedes that it agreed with this proposition but argues that the decisive factor is not whether special security is necessary, but whether the arrangements it has made for such security are sufficient.

The plaintiff's position is correct.

ii. Background Checks on Performers

The Town contends that there is insufficient proof that the plaintiff will conduct adequate background or criminal checks on the performers. The plaintiff points out that the background of personnel will be checked by other adequate means: entertainers will be booked through national and regional talent agencies who are

equipped to and do make such checks. Moreover, as the plaintiff's counsel represented at the hearing, the plaintiff will utilize the services of a licensed private investigating firm to perform spot checks of the premises to insure compliance with company policy, standard operating procedures and state and local laws.

The plaintiff's proposed plan for these security measures is adequate and provides no empirical basis for the Town's determination that the proposed activity could not be conducted in a safe and non-disruptive manner.

### iii. Separate Parking

In denying the license, the Town gave as a reason that there is no adequate provision for separate parking for management, entertainers or patrons. As the plaintiff points out, it represented at the hearing that separate parking arrangements will be made for management and entertainers respectively, and that entertainers will be escorted to their cars.

The plaintiff's provision on this score is adequate.

### iv. Fencing

The Town found as a reason for denying the license that "the only fencing will be to keep patrons off the wooded hill" behind the premises. In response, the plaintiff points out that it represented at the hearing that, if necessary, it will erect additional fencing.

The plaintiff's position is sufficient. At the hearing when questioned on this subject, the plaintiff represented that, although its present plan was only to fence in the wooded area (because it was the only area that appeared to present an obvious safety risk) it would erect whatever additional fencing was proved to be necessary to assure safe use of the premises.

### v. Plaintiff's Failure to Show a Management Office on the Floor Plan

The Town criticizes plaintiff's failure to show a management office on the floor plan which it submitted. This proposition is without merit because the plaintiff represented (Tr. at 71–72) at the hearing that the first floor ticket office will be a management office.

### vi. Detention Area for Unruly Patrons

■ The Town finds the application vulnerable because "there is no detention area for unruly patrons." The plaintiff asserts that even if unruly behavior occurs, the plaintiff, as private party, would have no legal authority to detain a misbehaving patron.

There is no merit to the Town's criticism. While the plaintiff may or may not be within its rights to detain unruly patrons it is not fairly within the permissible statutory standard to require under § 183A the designation of a special "area" for that purpose.

### vii. Barriers Near Patrons' Tables

The Town criticizes the application because it provides no barrier between the performers and patrons for entertainment performed near patrons' tables. This basis of rejection is without merit as incompatible with the nature of the performance. Moreover, the plaintiff represents that protection will be provided by security personnel and video surveillance. Of course, if the plaintiff were to fail to take measures to assure that the performers can dance safely, it would be a matter of concern. However, the plan proposed by the plaintiff would reasonably assure the necessary security.

### viii. Adequate Dressing Room for Performers

The Town alleges that there is no adequate provision of a dressing room for the performers. The plaintiff points out that it represented at the hearing that the "ex-

tremely large" manager's office on the second floor would be converted to a dressing room.

The plaintiff's provision of a dressing room is sufficient and can not provide a basis for denying the license.

ix. Plan to Evacuate Performers

The Town denied the application in part because it found that there was no adequate plan to protect or evacuate the performers "if they feared for their safety, or if they felt their lives are in danger, or if they want to hide."

The plaintiff points out that it represented at the hearing that there is a non-public access stairway which would allow the entertainers free and safe access to the first floor, second floor and basement, and that, in addition, there is drive-in access to the basement. The plaintiff also represented that if it does not construct a back-stage area for entertainers to enter the stage, they will be escorted to the stage by security personnel.

Plaintiff's plan to protect or evacuate performers is sufficient and does not justify the denial of the license.

x. Mr. Hurd's Lack of Formal Training in Security

In denying the license, the Town gave as a reason that Mr. Steven Hurd, who the plaintiff designated at the hearing to explain security matters, has had no formal training in security. The Town adds, in a non sequitur and without specification, that Hurd's testimony was not found to be credible.

In response, the plaintiff points out that Mr. Hurd has had over 10 years of experience in security matters in relation to the operation of adult entertainment establishments, similar to the proposed venture.

While the plaintiff is justified in its concern that Hurd has no "formal training" in security, it may nevertheless be true that his on-the-job experience is sufficient to assure an adequate system of security at

the site. To clarify the record on this point the matter will be remanded to the Town to amplify the record.

*The Alleged Failure to Provide Adequate Management*

The Town found that "the requested license could not be granted because the plaintiffs' proposal would provide inadequate managerial supervision of proposed operation." As discussed in detail below, points (i)–(iv) and (vi) are not fairly within the permissible statutory standard. Point (v) does not provide an empirical basis for the Town's determination that the proposed activity could not be conducted in a safe and non-disruptive way.

i. The Manager's Presence at Operation

■ In denying the license, the Town gave as a reason that Richard McCabe, who will be the manager of the plaintiff, will not be on the premises on a day-to-day basis.

The plaintiff replies that Mr. McCabe will be on the premises two (2) days a week and that, in addition to his presence, there will be a operations manager, one or two training or assistant managers, a senior host, a senior bar manager and a house manager, all of whom will be on the premises during all business hours.

In view of the bevy of management officials available, the fact that Mr. McCabe will be present only two days a week is not a sufficient justification to deny the application.

ii. That the LLC is not "Officially Set Up" at 320 Washington Street

■ The Town asserts that the "LLC" (that is, the plaintiff, Amesbury Entertainment) is not "officially set up at 320 Washington Street" as stated in its application.

Plaintiff concedes that the LLC is not officially set up at 320 Washington Street, but explains that it is using that location as

a temporary address pending actual removal to the premises at issue here.

The Town's position on this item is without merit.

### iii. That the LLC is not a Party to the Memorandum of Understanding

■ The Town contends that the fact that the LLC is not a party to the Memorandum of Understanding between the McCabe group and its partners, Freund and Dipple, is a basis for denying the application.

The plaintiff argues that this finding, although facially correct, is irrelevant and does not support the conclusion that the public health, safety or order will be endangered by the proposed venture.

The plaintiff's position is correct.

### iv. Tax Liability Outstanding on the Premises

■ The Town adds, as a reason for denial, the fact that the plaintiff denies responsibility for payment of the tax liability outstanding on the premises on which it expects to operate.

The plaintiff responds that this finding is irrelevant under the statute and that, in any event, present occupants of the premises are and will remain liable.

The plaintiff's position is correct. The Town can not require under standards set out in § 183A that the plaintiff assume the tax liability of the owner and former lessee of the premises in which is plans to operate.

### v. No Operations Manager Has Been Named

The Town criticizes the fact that an operations manager has not yet been named.

The plaintiff replies that the fact that it has not yet determined who its operations manager will be does not support the conclusion that the public health or safety is jeopardized.

While there is merit to the plaintiff's position, it is nevertheless reasonable that the Town should satisfy itself that the operations manager, when named, is competent to assure a safe operation. Accordingly, the matter is remanded to the Town to amplify the record on this point.

### vi. Job Descriptions

■ The Town found the application inadequate because the job descriptions and responsibilities of the persons in the position of training manager, assistant manager, senior host and senior bar manager, were not adequately described.

The plaintiff points out that the Town never inquired at the hearing about the job descriptions of these officials and that M.G.L. ch. 140, § 183A does not require such detail.

The plaintiff's position is correct.

*The Effect of Previous License and Fire Code Violations*

■ The remaining points by the Town under § 183A(a) can be grouped as constituting a finding that the requested license should not be granted because of previous license and fire code violations issued to the prior occupants of the premises.

Plaintiff, not surprisingly, responds that this contention is without merit because the violations in question were not caused by the plaintiff.

The plaintiff is correct that its application may not be denied because of the violations by others than itself. It is not clear from the record whether the Town contends that violations still exist as to the premises. If so, it would be justifiable for the Town to require that all violations be cured before the plaintiff commences an actual operation on the premises. However, the points raised by the Town to date do not constitute a basis for denial of the application.

*The Alleged Increase in Noise and Traffic*

 The final reasons given by the Town for denying the application have to do with the alleged increase in noise and traffic that would result from the proposed activity.

Here, the record clearly supports the plaintiff and provides no empirical basis for the Town's determination that the proposed activity could not be conducted so as to prevent an unreasonable increase in noise or traffic. It is estimated that the number of persons who may be present at the premises during plaintiff's proposed operation would be no more than 160, whereas the existing use of the premises as a ski hill has involved as many as 700 people. It is reasonable to assume that the reduction in the number of people using the premises will bring about a reduction in the amount of traffic and noise which it generates. Moreover, all of the plaintiff's proposed activities will take place indoors, whereas previous activities took place out of doors.

These conclusions are supported by a traffic study submitted by the plaintiff which indicates a reduction of traffic under the new arrangement. While the Town criticizes the fact that the plaintiff has failed to establish the precise date on which the traffic survey was made, the written version of the survey presented at the hearing is dated June 8, 1999 and the plaintiff has represented that the survey was made shortly before the written version was drafted.

### III.

 The detailed analysis above establishes that the Town has improperly applied the statute in dealing with plaintiff's application and that the plaintiff is entitled to appropriate relief. The question remains as to whether preliminary injunctive relief is appropriate.

 To merit the award of preliminary injunctive relief, a plaintiff must show that 1) there is a substantial probability of plaintiff's success on the merits. 2) The plaintiff will suffer immediate irreparable harm unless injunctive relief is granted. 3) The balance of equities favors the plaintiff. 4) The requested injunctive relief would not adversely affect the public interest.

In the light of the discussion above, it may be concluded that the plaintiff here has demonstrated a substantial probability of success on the merits; that it will suffer commercial harm if it is unjustly prevented from presenting its show; and that, although such harm may be compensable in dollars, as the Town argues, there is some doubt whether money compensability is an appropriate consideration in cases dominated by free speech values. There is also a strong argument that the balance of equities favor a party in the plaintiff's position, since M.G.L. ch. 140, § 183A clearly confers upon an applicant the right to procure a license unless the licensor establishes that the case falls within the statutory exceptions, which has not been done on this record. Finally, it appears that request of injunctive relief would not adversely affect the public interest since a party in plaintiff's position is entitled to compliance with the statute.

In spite of these considerations, however, the granting of preliminary injunctive relief in the present posture of the case is inappropriate. The plaintiff here is requesting the Court to order the issuance of a license. This is a request for extraordinary relief. It is analogous to a Court's ordering a college to grant a student a passing grade in a subject simply because it finds that the examiner improperly administered the exam (although, even in such a case injunctive relief might be appropriate if the maladministration was repetitive). It is Hornbook law that mandatory preliminary injunctive relief is a departure from the norm. As the Court of Appeals most recently observed:

> The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the

trial court, upon full adjudication upon the case's merits, more effectively to remedy discerned wrongs.

*CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.,* 48 F.3d 618, 620 (1st Cir. 1995).

That observation is applicable to the case at hand. The appropriate remedy, and the relief which is hereby granted, is to remand the case for prompt further proceedings by the Town not inconsistent with this opinion.

The motion is granted to the extent indicated and otherwise denied.

It is so ordered.